IN THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:25-CV-000230-MR-WCM

| | |
|---|---|
| DOUGLAS S. RIORDAN,<br><br>Plaintiff,<br><br>v.<br><br>VPC BUILDERS, LLC; TIMOTHY A. CHURCH D/B/A TIMOTHY CHURCH MASONRY; PRICE FRAMING AND CONSTRUCTION, LLC; WATAUGA VALLEY SERVICES, LLC; A FLOORING OUTLET, INC. AND ARETE ENGINEERS, PLLC,<br><br>Defendants.<br><br>vs.<br><br>VPC BUILDERS, LLC,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>ERIN RIORDAN,<br><br>Third-Party Defendant | **DEFENDANT A FLOORING OUTLET, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS CROSSCLAIM ASSERTED BY VPC BUILDERS, LLC** |

**A FLOORING OUTLET, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS CROSSCLAIM**

Defendant A Flooring Outlet, Inc., by and through the undersigned counsel, submits this brief in support of its 12(b)(6) Motion to dismiss crossclaims of VPC Builders, Inc. based on the economic loss rule and North Carolina law.

## I. Plaintiff's First Amended Complaint

This is a residential construction defect claim. Plaintiff is a citizen of Florida, and all defendants appear to be citizens of North Carolina. (*First Amended Complaint*, pp.2-5). Plaintiff filed this civil action in this Court against the Defendants pursuant to 28 U.S.C. § 1332.

According to the Complaint, Plaintiff Douglas S. Riordan retained VPC Builders, Inc. to design and build a single-family residence at 3916 Shulls Mills Road, Boone, Watauga County, North Carolina (the "Project"), under two contracts governed by North Carolina law: a design agreement dated on or about June 7, 2021, and a cost-plus construction agreement dated on or about April 27, 2022. (See *Plaintiff's First Amend. Complt*., generally, pp. 8-9). Riordan alleges that VPC Builders, Inc. (hereinafter referred to as "VPC") mismanaged the Project, producing construction defects, code violations, delays, and overbilling. (*Id*. at p. 6).

Plaintiff asserts multiple causes of action against VPC: (I) breach of contract regarding the design contract against VPC; (II) breach of the design agreement by breaching the implied duty that plans and specifications are adequate; (III) breach of the construction contract; (IV) breach of the implied duty of workmanlike performance; (V) and a declaratory judgment that the Court declare that VPC was the first to breach the contracts; that VPC had no right to stop work at the time; and that Plaintiff was at all relevant times in substantial compliance with Plaintiff's contractual obligations, which required VPC to honor its obligations under the contract. (Document 36 pp.34-35).

Plaintiff also filed actions against VPC's subcontractors. Plaintiff's causes of action against Defendant Church who was the stone mason subcontractor, and Defendant Price, the framing and siding subcontractor, and Defendant Watauga Valley Services, the concrete slab subcontractor, and A Flooring Outlet, Inc. (hereinafter referred to as "AFO") the flooring subcontractor, are all plead as claims in negligence and breach of the implied duty of workmanlike performance causes of action. (See Document 36, pp. 35-51). Plaintiff's causes of action against Areté Engineers, the structural engineer, are also in negligence and breach of the implied duty of workmanlike performance. (Document 36, pp. 51-55).

Importantly, Plaintiff has not filed any claims in negligence against VPC. (See *First Amended Complaint*).

**II. VPC's Answer, Counterclaim, Third-Party Complaint, and Crossclaim**

VPC answered the complaint and generally denied any liability to Plaintiff and further asserted a counterclaim against Riordan for nonpayment for services rendered on the project. In the same pleading, VPC filed a third-party complaint against Plaintiff's wife Erin Riordan, alleging that both Riordan's breached the cost-plus construction contract by failing to pay outstanding invoices totaling $534,140.72, and seeking damages, enforcement of a claim of lien, and, in the alternative, unjust enrichment. VPC's third party complaint and counterclaims are against Plaintiff are not the subject of the instant motion.

VPC filed crossclaims against its subcontractors, including AFO, and it is these crossclaims against the subcontractors that fail to state a claim under Fed. R. Civ. P. Rule 12(b)(6). (Document 36 - *VPC's Answer to Amended Complaint, Counterclaim, Third Party Complaint, and Crossclaim*[1] at page 33).

VPC's crossclaims assert four "shotgun" group-plead causes of action against the subcontractor defendants: (1) breach of contract, alleging the parties

---

[1] Document 36 is hereinafter sometimes referred to as "VPC's Crossclaim".

"entered into valid contracts" for the subcontractors to perform work on the Project; (2) negligence, pleaded "in the alternative" if it is determined that VPC did not enter into valid contracts with AFO and the other subcontractors; (3) breach of express and implied warranties; and (4) indemnity and contribution, alleging that the crossclaim defendants' "negligence" was "the active, positive and sole producing cause" of Riordan's injury and seeking contribution under Chapter 1B of the North Carolina General Statutes. (*VPC's Crossclaim* pp. 34-38).

As to AFO specifically, VPC alleges AFO was "retained by VPC to provide install wood flooring on the Project [sic]." (*Id*. at 34, ¶6).

Every one of VPC's crossclaim theories is contingent: VPC seeks recovery from the subcontractors "[i]f VPC is found to be liable to Plaintiff." (VPC's Crossclaim at p. 35 at ¶9; p. 36 at ¶12; p. 37 at ¶16; p. 37-38 ¶¶18-19). VPC does not plead that a breach of contract by the subcontractors caused VPC actual, pecuniary damages. VPC does not allege any express indemnity agreement — or any written contract exists containing an indemnity provision — between VPC and AFO or any other subcontractor exists. Thus, in short, all four of VPC's crossclaims against the subcontractors are just indemnity claims that are not actionable under North Carolina law.

## III. LEGAL STANDARD

Sitting in diversity, North Carolina law controls Plaintiff's state-law claims in this matter in this Court. To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient factual matter to state a claim for relief that is "plausible on its face"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*, 660 F. Supp. 3d 453 (W.D.N.C. 2023). Although the court accepts well-pleaded factual allegations as true, a claim "entirely devoid of any facts supporting a given claim cannot proceed," and a claim barred as a matter of law must be dismissed. (*Id.*)

It is well established in North Carolina that "the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." *Crescent City Univ. City Venture, LLC v. Trussway Manu., Inc.*, 376 N.C. 54, 852 S.E.2d 98 (2020). Under the economic loss rule, a "tort action must be grounded on a violation of a *duty* imposed by operation of law," not a violation of a duty arising purely from "the contractual relationship of the parties." *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 160, 796 S.E.2d 827, 831 (N.C. Ct. App. 2017) (citation and internal quotation marks omitted). Thus, a "tort action

does not lie against a party to a contract who simply fails to properly perform the terms of the contract." *Id.* at 830 (citation omitted). "It is the law of contract," not tort law, "which defines the obligations and remedies of the parties in such a situation." *Id.* (citation omitted). Accordingly, "North Carolina law requires" courts "to limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) (quoting *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297, 301 (1976). Damages arising from defective or nonconforming construction constitute economic loss and do not give rise to negligence causes of action. *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 587 S.E.2d 470 (2003). As stated in, *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158 (4th Cir. 2018):

> The economic loss rule reflects "the fundamental difference between tort and contract claims." *Id.* Contract law is designed to place an injured party in the position he would have occupied had the parties adhered to their contract. Tort law, by contrast, incorporates "principles of punishment" by allowing recovery of punitive damages. *Strum v. Exxon Co.*, 15 F.3d 327, 330 (4th Cir. 1994). In preventing parties from asserting tort claims for a simple breach of contract, the economic loss rule thus "encourages contracting parties to allocate risks for economic loss themselves." *Lord v.*

*Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 643 S.E.2d 28, 30 (2007) (opinion by Wynn, J.); *see also Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 499 S.E.2d 772, 780 (1998) ("To give a party a remedy in tort ... would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract.").

*Legacy Data Access, Inc. v. Cadrillion, LLC*, at, 164 (4th Cir. 2018).

Whether the economic loss rule bars a tort claim arising from a contractual relationship is a question of law properly resolved on the pleadings. *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 587 S.E.2d 470 (2003); *Peter Marco, LLC v. Banc of Am. Merch. Servs.*, LLC, 660 F. Supp. 3d 453 (W.D.N.C. 2023); *Ellis v. Louisiana-Pac. Corp.*, No. 3:11CV191, 2011 WL5402878, at *2 (W.D.N.C. Nov. 8, 2011), *aff'd*, 699 F.3d 778 (4th Cir. 2012).

## IV. ARGUMENT

### I. North Carolina's economic loss rule bars VPC's negligence crossclaim against A Flooring Outlet (Count II)

VPC's second cause of action against AFO is a negligence claim "in the alternative." As noted above, Plaintiff did not sue VPC in tort and thus VPC and AFO cannot be both adjudicated as joint tort-feasors. Whether plead in the alternative or not, the negligence crossclaim fails to state a claim under the facts as

plead and well-settled economic loss rule precedent. North Carolina's economic loss rule "bars recovery in tort by a plaintiff against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill." *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 852 S.E.2d 98 (2020). Stated differently, "no negligence claim exists where all rights and remedies have been set forth in [a] contractual relationship." *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 246 N.C. App. 27, 783 S.E.2d 35 (2016). A tort claim survives only if it is "identifiable and distinct" from the breach-of-contract claim — that is, only if "the defendant has breached some duty other than a contractual duty." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158 (4th Cir. 2018). There is no such allegation in VPC's Crossclaim against AFO. VPC has not identified or plead any identifiable and distinct facts that would allow VPC to proceed with any claim other than a putative breach of contract claim against AFO; although as discussed below, a breach of contract claim fails as well.

This principle applies with full force to a general contractor's claim against its subcontractor. In *Kaleel Builders*, the North Carolina Court of Appeals held, on facts materially identical to those here, that a general contractor had no negligence claim against its subcontractors for negligence in fulfilling their duties and the quality of the services contracted for, because "no negligence claim [exists] where

all rights and remedies have been set forth in the contractual relationship." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 587 S.E.2d 470 (2003).

Under North Carolina law, when a defective component of a larger system causes damage to the rest of the system, only economic loss has occurred, and the economic loss rule still applies. *See, e.g., Higginbotham v. Dryvit Sys.*, 50 U.C.C. Rep.Serv.2d (Callaghan) 128, at *11 (M.D.N.C.2003); *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002), *aff'd*, 71 F. App'x 960 (4th Cir. 2003) (collecting cases from North Carolina and other jurisdictions); *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998). Thus, the economic loss rule does not restrict economic losses to the defective component itself, but may include damages to the whole product caused by a defective component. *See, e.g., Wilson*, 206 F.Supp.2d at 753–54.

Applied here, the economic loss rule bars VPC's negligence crossclaim. VPC affirmatively alleges that its relationship with AFO was governed by a "valid contract[]" for AFO to install the wood flooring. (VPC's Crossclaim at p. 34; ¶¶ 6, 8.) The only injury VPC identifies is economic: the amounts VPC may be ordered to pay Riordan for the allegedly defective flooring work — damage to the subject matter of the parties' contract. (VPC's Crossclaim at p. 35). Where "the subject matter of a contract has, in its operation or mere existence, caused injury to itself or

failed to perform as bargained for, the damages are merely economic," and no negligence claim lies; the promisee "must instead look toward the breach of its contractual relationship." *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 852 S.E.2d 98 (2020). The North Carolina Court of Appeals recently reaffirmed that a negligence claim is barred when the "injury resulting from the breach is damage to the subject matter of the contract." *Van Camp v. Shaffner*, 931 S.E.2d 589 (N.C. Ct. App. 2026). It is axiomatic that subject matter of the contract was the flooring on the project.

None of the four narrow exceptions to the economic loss rule applies. The injury alleged is not to a third party or to property other than the subject of the contract, VPC was not acting as a bailee or common carrier charged by law with safeguarding the property, and no willful injury or conversion is alleged. *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 246 N.C. App. 27, 783 S.E.2d 35 (2016). Nor has VPC alleged any duty "other than a contractual duty"; its crossclaim rests entirely on AFO's alleged failure to perform the contracted-for flooring work. VPC's Crossclaim at 35; see also *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158 (4th Cir. 2018).

VPC cannot avoid the rule by pleading negligence "in the alternative" to its contract claim. (VPC's Crossclaim at p. 35). VPC's own crossclaim alleges that

valid contracts governed the subcontractors' work. (VPC's Crossclaim at p. 34). The narrow line of authority declining to apply the economic loss rule where there is no contract between the parties is therefore inapplicable, because that exception turns on the absence of any contract — the opposite of what VPC alleges. See *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 643 S.E.2d 28 (2007*); Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 852 S.E.2d 98 (2020).

**II. VPC's derivative claim for tort indemnity and contribution fails with the barred negligence claim.**

VPC's Fourth Cause of Action for indemnity and contribution is expressly premised on the crossclaim defendants' "negligence" being "the active, positive and sole producing cause" of Riordan's injury. (VPC Crossclaim at p. 37). Because that tort predicate is barred by the economic loss rule, the derivative indemnity and contribution claim cannot stand.

In North Carolina, "a party's rights to indemnity can rest on three bases: (1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law." See *Kaleel Builders*, at 38, 474 *(2003); see also Lineage Logistics, LLC v. Primus Builders, Inc.*, No. 21 CVS 2372, 2024 WL 759948 (N.C. Super. Feb. 23, 2024)).

VPC alleges no express indemnity agreement and no implied-in-fact contract of indemnity with AFO, so its indemnity claim can rest only on the equitable, implied-in-law theory. That theory "requires there be an underlying injury sounding in tort," with the party seeking indemnity having "imputed or derivative liability for the tortious conduct from which indemnity is sought." *Lineage Logistics, LLC v. Primus Builders, Inc.*, No. 21 CVS 2372, 2024 WL 759948 (N.C. Super. Feb. 23, 2024). Where the economic loss rule bars the underlying negligence claim, it likewise bars "indemnity claims which [are] rooted in tort." *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 602 S.E.2d 1 (2004).

The contribution claim fails for the same reason. The right to contribution arises only "where two or more persons become jointly or severally liable in tort for the same injury to person or property." *N.C. Gen. Stat. Ann. § 1B-1* "[T]here is no right to contribution from one who is not a joint tort-feasor," and a party that "could only be liable . . . for breach of contract . . . could not be a joint tort-feasor." *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 602 S.E.2d 1 (2004). Contribution "is only available if [the crossclaimant] prevails on its negligence claim." *Lineage Logistics, LLC v. Primus Builders, Inc.*, No. 21 CVS 2372, 2024 WL 759948 (N.C. Super. Feb. 23, 2024). Federal courts applying North Carolina law have accordingly dismissed both implied-in-law indemnity and contribution claims where the would-be indemnitee faced "only a breach of contract claim"

rather than tort liability, and have held that appending passive-negligence and joint-cause allegations to a negligence count does not save such claims. *Walbridge Aldinger LLC v. Cape Fear Eng'g, Inc.*, No. 7:21-CV-57-FL, 2022 WL 288181 (E.D.N.C. Jan. 31, 2022)*; Walbridge Aldinger LLC v. Cape Fear Eng'g, Inc.*, No. 7:21-CV-57-FL, 2022 WL 288181 (E.D.N.C. Jan. 31, 2022).

Because AFO cannot be held negligent, no tort predicate exists to allow VPC's claim for indemnity or contribution, and the Fourth Cause of Action must be dismissed as a matter of law. *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 602 S.E.2d 1 (2004); *Lineage Logistics, LLC v. Primus Builders, Inc.*, No. 21 CVS 2372, 2024 WL 759948 (N.C. Super. Feb. 23, 2024).

**III. The Crossclaims for Breach of Contract and Breach of Warranty are just invalid indemnity claims by another name (Count I and III)**

VPC's first and third causes of action styled as a breach of contract and breach of warranty. However, these claims are just thinly veiled indemnity crossclaims in an attempt to perform an end-run around the economic loss rule. VPC fails to allege that the contract with AFO was in writing or contained an written indemnity obligation for work on the project. VPC clearly seeks to pass through its liability to Plaintiff, which VPC denies, on to VPC's subcontractors.

In *Crescent*, the trial court found that despite the title of the claim, such pleading was in fact a claim for "implied-in-law indemnification." *Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 15 CVS 14745, 2018 WL 3765313, at *22 (N.C. Sup. August 8, 2019). There, the trial court held:

> For a party to be entitled to implied-in-law indemnity, there must "be an underlying injury sounding in tort." *Kaleel Builders, Inc.*, 161 N.C. App. at 41, 587 S.E.2d at 475. "The party seeking indemnity must have imputed or derivative liability for the tortious conduct from which indemnity is sought." *Id*. This requirement for an underlying tortious injury has limited the availability of the implied-in-law indemnification remedy in construction cases, where North Carolina's economic loss rule confines many claims to the law of contract. See *Tall House Bldg. Co.*, 165 N.C. App. at 884, 602 S.E.2d at 3–4; *Kaleel Builders, Inc.*, 161 N.C. App. at 41–42, 587 S.E.2d at 476.

*Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, No. 15 CVS 14745, 2019 WL 3765313, at *21 (N.C. Super. Aug. 8, 2019). As stated above, the implied in law indemnity claim is barred based on the facts as plead and well-settled law.

With regard to the warranty crossclaim, an express warranty is contractual in nature, and its terms are construed in accordance with their plain meaning. See,

e.g., *Allen v. Roberts Const. Co., Inc.*, 138 N.C. App. 557, 532 S.E.2d 534 (2000). VPC fails to plead any facts setting forth the terms of any express warranty. There is no reference to the contract terms themselves in the crossclaim. The third cause of action contains nothing but legal conclusions.

VPC's crossclaim for breach of warranty do not specify whether VPC is alleging AFO breached the implied warranty of habitability, or the implied warranty of workmanlike construction. Regardless, neither claim is available to VPC against AFO.

VPC's crossclaim at Count III alleges the Subcontractors expressly and impliedly warranted to VPC "that all work and materials provided in VPC's scope of work for the Property would be of good quality and completed in conformity with the manufacturer's instructions, code, plans and designs for the Property." (VPC Crossclaim p. 36 ¶15). This language is similar to the implied warranty the North Carolina Supreme Court recognized in *Hartley v. Ballou*, 285 N.C. 51, 62, 209 S.E.2d 776, 783 (1974), which stated, "in every contract for the sale of a recently completed dwelling," a warranty that the dwelling "is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." *Hartley*, at 62, 783. The purpose of the warranty implied in *Hartley*

"is to protect the **homeowners** from defects which can only be within the knowledge of vendors." *Gaito v Auman*, 313 N.C. 243, 327 S.E.2d 870 (1985) (emphasis added).

The North Carolina appellate courts only apply the implied warranty claims VPC alleges in the context of builder-vendee relationships in cases of new residential construction and contractor-property owner relationships in cases of commercial and industrial construction. See *Ford v. All-Dry of the Carolinas, Inc.*, 211 N.C. App. 197, 711 S.E.2d 876 (2011); *Matthews v. Davis*, 191 N.C. App. 545, 664 S.E.2d 16 (2008); *Kenney v. Medlin Const.*, 68 N.C. App. 339, 315 S.E.2d 311 (1984); *Moss v. Best Knitting Mills*, 190 N.C. 644, 130 S.E. 635 (1925).

It is clear that VPC was not the builder-vendee to Plaintiff. VPC was merely the design-builder and it is equally clear that AFO is neither a builder-vendee and was merely a flooring subcontractor.

## CONCLUSION

For the foregoing reasons, A Flooring Outlet, Inc. respectfully requests that the Court dismiss all of VPC's Crossclaims with prejudice. Respectfully submitted,

This the 21 day of September, 2026.

MCANGUS GOUDELOCK & COURIE, PLLC

/s/John E. Spainhour
NC Bar No.  28089
10 Brook Street, Suite 200
Asheville, North Carolina 28803
Phone: (828) 575-1902
Fax: (828) 707-9423
Email: jspainhour@mgclaw.com

ATTORNEYS FOR A FLOORING OUTLET, INC.